IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. MARK and JACKIE STEVENSON, guardians of Dustin Stevenson, and <br> 2. DUSTIN "CHASE" STEVENSON, by and through his parents and guardians, Mark and Jackie Stevenson, <br><br> Plaintiffs, <br><br> vs. <br><br> 1. INDEPENDENT SCHOOL DISTRICT NO. I-038 OF GARVIN COUNTY, OKLAHOMA, a/k/a WYNNEWOOD PUBLIC SCHOOLS, <br> 2. JIM STARK, in his individual capacity, <br> 3. JUDITH BARNES, in her individual capacity, and <br> 4. BOARD OF EDUCATION FOR WYNNEWOOD PUBLIC SCHOOLS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CIV-04-1598-C |

## DEFENDANTS' TRIAL BRIEF

The Defendants, Independent School District No. 38 of Garvin County, Oklahoma ("School District") and Judith Barnes ("Barnes") (collectively "Defendants"), submit this trial brief to the Court on topics anticipated to become issues during the trial of this case. The Defendants show the Court as follows:

### Background

1. Dustin "Chase" Stevenson was born in 1985. On April 10, 1989, Chase's categorical eligibility and IEP ("Individualized Education Program") teams first met in the School District to determine his eligibility for services under the Education for All Handicapped Children Act (EHA, now known as the Individuals with Disabilities Education Act) and develop

an initial IEP. The categorical eligibility team determined that Chase was eligible for special education programming to address a speech/language impairment, and the IEP team identified speech/language goals and objectives for Chase. Chase's parents were members of the IEP team at all times and members of the eligible team at times as provided by law.

2. The categorical eligibility and IEP teams met periodically thereafter to reevaluate Chase and redetermine his disability, while the IEP team met periodically to review his existing IEPs and develop new ones.[1]

3. On October 28, 1999, Chase's teacher, Carllan Henderson, received the approval of the State Department of Education to serve students identified under the IDEA as having autism. Henderson already held certification in an area of special education and had three years, or until January, 2002, to complete 32 clock hours of registry training in autism. Henderson completed the registry training in April, 2000.

4. Chase graduated from the School District in May, 2005.

5. The Plaintiff claims that the School District deprived him of his rights as an autistic individual and enabled and caused him to be discriminated against based on his disability. Chase asserts causes of action against the School District under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq.* ("ADA") and 42 U.S.C. § 1983 ("Section 1983").

6. On March 5, 2004, the Stevensons requested an administrative special education due process hearing against the School District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The Stevensons raised five specific issues. The case

---

[1] At that time, the law used two categories to identify cognitive impairments – "educable mentally handicapped" and "trainable mentally handicapped." The IDEA was subsequently amended to eliminate these categories and create a broad "mental retardation" category. A specific category for "autism" was later recognized and Chase's categorization was appropriately changed as the law changed.

2

was tried in May, 2004. On July 1, 2004, the Hearing Officer submitted his written Decision as to the five specific issues. Both the District and the Stevensons appealed portions of the Decision. On August 20, 2004, the Appeal Officer submitted a written Decision affirming the Hearing Officer's Decision as to the issues appealed. The administrative officers both found that the School District did not purposely delay Chase's identification as a child with autism and did not deprive him of participation in band concerts or contests. On November 22, 2004, the Plaintiffs filed this action, which raised these same issues, among others. The Plaintiff did not request the Court's review of the administrative due process Decisions and has **admitted** in filings on summary judgment and in limine motions that this is not an appeal of the Decisions. The administrative due process Decisions are therefore final, and re-litigation of the issues identified and decided in the special education due process hearing is precluded here under the doctrine of issue preclusion. This issue is addressed in the School District's pending Motion for Summary Judgment.

7. The School District has performed or offered to perform all actions required of it in the Hearing Officer's Decision. Certain of those items (the payment of certain amounts of money for evaluation services) have been accepted by the Stevensons. Other items (the development and circulation of a field trip policy) were completed unilaterally by the School District. The remaining item (compensatory education for the computer class not offered during the summer of 1999) was offered by the School District but rejected by the Stevensons and Chase.

8. The Plaintiff asserts that the School District denied Chase a quality education for an autistic individual. The Plaintiff did **not** raise denial of a free appropriate public education as an issue at the special education due process hearing. Therefore, the Court lacks subject matter

3

jurisdiction to consider that and any other educational issue about which the Plaintiff failed to exhaust IDEA administrative remedies. This issue is addressed in the School District's pending Motion for Summary Judgment.

9. In count three of the Complaint, the Plaintiff alleges failure of the School District to comply with Section 1983. However, Section 1983 does not create a cause of action, but rather provides a means of enforcing the substantive rights granted by other statutes. Section 1983 cannot be used to enforce substantive rights granted by Section 504 or the ADA. Therefore, the Section 1983 claim fails as a matter of law. This issue is also addressed in the School District's pending Motion for Summary Judgment.

10. The applicable two-year statute of limitation bars the Plaintiff's Section 504, ADA and Section 1983 claims. In addition, under the doctrine of laches, the Stevensons' unreasonable delay in bringing this action will materially prejudice the District. These issues are addressed in the School District's pending Motion for Summary Judgment as well.

11. The Plaintiff contends that Barnes subjected him to the intentional infliction of emotional distress in 1993 and again in September and October, 1997 and that her acts were outside the scope of her employment.

12. Barnes taught Chase in her special education classroom during the 1997-98 school year and had interaction with him prior to that time in her role as a special education teacher and as the School District's special education coordinator. Barnes left her employment with the School District in May, 1998.

13. The Plaintiff contends that Barnes' alleged acts constitute outrageous conduct under Oklahoma law. However, the undisputed facts demonstrate that the conduct alleged by the Plaintiff does not rise to that level as a matter of law. This is an issue in Barnes' pending Motion

4

for Summary Judgment, as is her contention that her acts were all within the scope of her employment.

14. Barnes contends that Chase's action is untimely under the applicable two-year statute of limitation, the one-year savings statute for refiling actions that fail other than upon the merits and under the doctrine of laches. The Plaintiff claims that Barnes' last alleged bad act occurred in May, 1998, yet he did not file this lawsuit against her until November, 2004. That unreasonable delay will materially prejudice Barnes in that her intervening treatment for cancer and lengthy absence from the District now render her unable to recall specific details concerning Chase's education from 1989 to 1998. This is also an issue in Barnes' pending Motion for Summary Judgment.

15. The summary judgment issues and statements of undisputed facts have been thoroughly briefed and are ready for determination. This trial brief will not address those issues again, but will address additional topics that will likely be presented at the trial of this case, if necessary.

## Claims

The Plaintiff originally filed a complaint with seven separate causes of action. The Defendants filed motions to dismiss, and numerous claims were dismissed by the Court and voluntarily by the Plaintiff:

| No. | Cause of Action | Defendant | Status |
|---|---|---|---|
| 1. | ADA | School District | Pending |
| 2. | Section 504 | School District | Pending |
| 3. | Section 1983 | School District | Pending |
| 4. | Section 1983 | Jim Stark | Dismissed by the Court |
| 5. | Section 1983 | Judith Barnes | Dismissed by the Court |
| 6. | Intentional Infliction of Emotional Distress (Chase) | (a) School District (b) Jim Stark | (a) Voluntarily Dismissed (b) Dismissed by the Court |

| | | | |
|---|---|---|---|
| 7. | Intentional Infliction of Emotional Distress (Stevensons) | (a) School District<br>(b) Jim Stark<br>(c) Judith Barnes | (a) Voluntarily Dismissed<br>(b) Dismissed by the Court<br>(c) Dismissed by the Court |

The only remaining claims are the federal claims against the School District (ADA, Section 504 and Section 1983) and the state law claim against Barnes (intentional infliction of emotional distress). As stated, all remaining claims are subject to pending motions for summary judgment. Alternatively, if the federal questions are resolved, the Court may refuse to extend supplemental jurisdiction over the remaining state law claim against Barnes.

## Elements

    a.    **ADA**

The elements of the Plaintiff's ADA claim against the School District are:

1. That the Plaintiff is a qualified individual with a disability;

2. That the School District excluded the Plaintiff from participation in or denied him benefits of the School District's services, programs, or activities, or subjected him to discrimination either in bad faith or through gross misjudgment; and

3. That the Plaintiff's exclusion, denial, or subjection to discrimination was based solely on his disability.

42 U.S.C. § 12132; *Birmingham v. Omaha School District*, 220 F.3d 850 (8th Cir. 2000).

    b.    **Section 504**

The elements of the Plaintiff's Section 504 claim against the School District are:

1. That the Plaintiff is a qualified individual with a disability;

2. That the School District excluded the Plaintiff from participation in or denied him benefits of the School District's services, programs, or activities, or subjected him to discrimination either in bad faith or through gross misjudgment; and

3. That the Plaintiff's exclusion, denial, or subjection to discrimination was based solely on his disability.

29 U.S.C. § 794; *Birmingham v. Omaha School District*, 220 F.3d 850 (8th Cir. 2000); *Sellers v. School Board of the City of Manassas*, 141 F.3d 524 (4th Cir. 1998); *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996); *Monahan v. State of Nebraska*, 687 F.2d 1164 (8th Cir. 1982).

### c. Section 1983

The only bases Plaintiff has identified for his Section 1983 claim are the ADA and Section 504. Section 1983 does not provide a cause of action independent of the ADA and Section 504 claims previously outlined. However, generally speaking, the elements of a Section 1983 claim are:

1. The Plaintiff has been deprived of his constitutional rights; and

2. Such deprivation was done pursuant to a custom, policy, ordinance, regulation, or official decision attributable to the School District.

*City of Canton v. Harris*, 489 U.S. 378, 386, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir. 1990).

### d. Intentional Infliction of Emotional Distress

The elements of the Plaintiff's claims for intentional infliction of emotional distress against Barnes are:

1. Barnes' actions in the setting in which they occurred were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society; and

2. Barnes intentionally or recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure.

*Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995); *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 734 (Okla. 2002); *Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998.

### Issues

**a.     School District's Obligation to Provide Education**

Although the Plaintiff asserts claims under Section 504, the ADA and Section 1983, his claims are thinly disguised IDEA issues. Under the IDEA the School District's obligation to Chase was to provide a "free appropriate public education." The IDEA defines a free appropriate public education" as follows:

> The term "free appropriate public education" means special education and related services that --
>
> (A)  have been provided at public expense, under public supervision and direction, and without charge;
>
> (B)  meet the standards of the State educational agency;
>
> (C)  include an appropriate preschool, elementary, or secondary school education in the State involved; and
>
> (D)  are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C.A. § 1401(8)[2]; 34 C.F.R. § 300.13.

---

[2] This citation refers to the IDEA prior to the most recent amendments in 2004. The amendments did not alter this definition.

In *Board of Education v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982), the United States Supreme Court discussed the meaning of a "free appropriate public education." The Court identified the following two-part test to determine whether a school district is meeting its obligation to provide a child with a disability a free appropriate public education:

> Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? **If these requirements are met, the state has complied with the obligations imposed by Congress and the courts can require no more**.

458 U.S. at 206-07, 102 S. Ct. at 3051, 73 L. Ed. 2d at 712 (emphasis added) (footnote omitted).

The IDEA does **not** require public schools to maximize a child's potential or to provide the best possible program. *Rowley*, 458 U.S. at 200-01, 102 S. Ct. at 3048, 73 L. Ed. 2d at 708; *Johnson v. Independent School District No. 4*, 921 F.2d 1022, 1028 (10th Cir. 1990), *cert. denied*, 114 L. Ed. 2d 79 (1991). Rather, a child's entitlement to a free appropriate public education **is satisfied** by the provision of "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203, 102 S. Ct. at 3049, 73 L. Ed. 2d at 710. The benefit conferred must be "meaningful." *Cedar Rapids Community School District v. Garret F.*, 526 U.S. 66, 73, 1195 S. Ct. 992, 997, 143 L. Ed. 2d 154, ___ (1999). Because the Act applies to children with a wide spectrum of disabilities, there is no single test for determining the level of educational benefit required. *Rowley*, 458 U.S. at 202, 102 S. Ct. at 3049, 73 L. Ed. 2d at 709; *Johnson*, 921 F.2d at 1027.

When determining whether a student's educational program is reasonably calculated to confer educational benefit under the IDEA, "due weight" must be given the opinions of school

officials responsible for the student's education. *A.E. v. Independent School District No. 25*, 936 F.2d 472, 475 (10th Cir. 1991).

**If the School District has satisfied its responsibilities to Chase under the IDEA, then it has also satisfied its obligations under Section 504 and the ADA.** However, to prove violations of Section 504 and the ADA, the **Plaintiff must meet a higher standard than proof** of an IDEA violation. He must demonstrate that the School District acted either in bad faith or with gross misjudgment. This the Plaintiff cannot do. The Hearing and Appeal Officers previously determined that the School District did not purposely delay Chase's identification as a child with autism under the IDEA. The Plaintiff did not appeal the administrative due process Decisions as to this or any other issue, and the doctrine of issue preclusion prevents relitigation of the decided issues.

**b.     Changes in the law and obligations of the School District while Chase was a student**

The EHA/IDEA changed dramatically over the years Chase attended the School District. Over that same time period, the Oklahoma State Department of Education ("SDE") periodically developed policies and procedures manuals to guide school personnel and others to understand and interpret the EHA/IDEA. SDE lists and explains in its policies and procedures manuals the various disability categories in which students can be identified. In the 1993 version of the Policies and Procedures for Special Education in Oklahoma, SDE for the first time included an "autism" category, which had recently been established by the amended IDEA.[3] Since issuing

---

[3] Also in 1993, SDE included the category "developmental delays" for the first time. In the administrative proceedings below, the Stevensons argued that the School District should have initially identified Chase as having "developmental delays." "Developmental delays mean a significant delay in one or more of the following domains: cognitive; physical (including fine and gross motor, vision, and hearing); communication (including speech and language); social or emotional; and adaptive; exhibited by a preschool child, three through five years of age, who is in need of special education and related services." Oklahoma State Department of Education, *Policies and Procedures for Special Education in Oklahoma*, p. 59 (1993), attached as Exhibit A. SDE commented that "[b]y the child's sixth birthday the LEA must determine eligibility for special education and related services in accordance

10

the 1993 version, SDE has developed just one other version of the policies and procedures manual – in 2002.

It is the responsibility of each student's multidisciplinary (formerly categorical eligibility) team to determine whether the student meets the eligibility criteria for a particular disability category. The evidence will establish that multidisciplinary teams determined Chase's disabilities, with the level of parental participation required by the law in effect at the time.

It is likely that EHA/IDEA requirements applicable at any given time will be the subject of inquiry in this case. The Court should be aware that those requirements have varied greatly over time and that questions from the attorneys should specifically reference the legal requirements in effect in Oklahoma at that time.

### c. Registry Training and Certification Requirements

In the 1993 version of the *Policies and Procedures*, SDE established the following requirements for instructional and related service personnel:

> In the state of Oklahoma, instructional and related service personnel must hold appropriate certification, licensure, registration, or other comparable requirements as listed in the "Instructional Personnel Standards" chart and the "Related Service Personnel Standards" chart.
>
> To develop and monitor the implementation of the IEP for a child a teacher must hold special education certification in the area of the child's disability. In those areas where no special education certification exists (Other Health Impairment, Autism, Traumatic Brain Injury, Multiple Disabilities, Deaf-Blindness, and Developmental Delays), a teacher must hold special education certification as outlined on the chart "Instructional Personnel Standards." Beginning January 1, 1994, a requirement will be implemented for the areas of Other Health Impaired, Autistim [sic], Traumatic Brain Injury, Multiple Disabilities and Deaf-Blindness of 32 clock hours of training in a three-year period with approved training activities which meet critical skill areas established by the SDE in coordination with the University Affiliated Program (UAP). A registry of

---

with the definitions of disabilities under the IDEA. The category Developmental Delays shall not be used once the child turns six." *Id.* The evidence will establish that by the time this new category was added to the law, Chase was already six years old.

11

> teachers completing this training will be maintained by the SDE through the UAP. Previous training in the above areas may meet registry requirements. Documentation of this previous training should be submitted to the Special Education Section of the SDE for approval beginning January 1, 1994.

*Policies and Procedures*, p. 116 (1993), attached as Exhibit B. These requirements apply to the area of disability identified by the student's categorical eligibility or multidisciplinary team.

The evidence will demonstrate that the teachers assigned "[t]o develop and monitor the implementation of the IEP[s]" for Chase consistently satisfied SDE's certification and registry training requirements. The evidence will demonstrate that a multidisciplinary team identified Chase as a child with autism on November 2, 1999. Because "autism" is a disability category for which no special education certification exists, the teacher who was assigned "[t]o develop and monitor the implementation" of Chase's IEP had to hold special education certification in any area of special education and have completed 32 clock hours of SES-approved training in a three-year period. The evidence will demonstrate that each teacher who was assigned "[t]o develop and monitor the implementation of the IEP" following Chase's identification as a child with autism met these requirements.

According to SDE, the certification and registry training requirements apply only to the teacher who is assigned "[t]o develop and monitor the implementation of the IEP for a child and not to the teachers who actually instruct students in the classroom. However, the evidence will demonstrate that Chase's special education classroom teachers also met SDE requirements for certification and registry training.

### d.  Role of the IEP Team/Due Process Procedures

The Plaintiff alleges violations of Section 504, the ADA and Section 1983 because Chase's IEP team did not identify what he now considers appropriate services for an autistic

12

child or adopt all recommendations made by Diana Mobley, Ph.D., a psychologist who evaluated Chase. The IEP team considers suggestions made by parents, school personnel and "experts" outside the school district. However, the decision as to what constitutes a free appropriate public education rests with the IEP team. If parents disagree with the IEP team's decision, they have the opportunity and the responsibility to challenge that decision through a due process hearing. They must exhaust administrative remedies before bringing such claims in court.

### e. Hearsay and Proving Civil Claims

In the administrative due process hearing on the Plaintiff's IDEA claims, the Plaintiff did not testify. He was not required to testify because the rules of evidence do not apply to administrative special education due process hearings in Oklahoma. Oklahoma State Department of Education, *Due Process in Special Education Guidelines*, p. 10 (1991), attached as Exhibit C. Therefore, Mrs. Stevenson was able to testify as to events that Chase reportedly witnessed, despite the fact that she was not present.

However, in the present case, Chase cannot rely on his mother's testimony as he did in the administrative hearing. He must prove his claims according to rules of evidence, including the hearsay rules. Fed. R. Evid. 801. Testimony by Mr. or Mrs. Stevenson about statements made by Chase would constitute hearsay and would be inadmissible. There is no hearsay exception applicable to allow Mr. or Mrs. Stevenson to testify as to such statements. Fed. R. Evid. 803. Furthermore, this is not a review of the IDEA administrative due process proceedings; the Plaintiff has specifically admitted this. Therefore, he cannot rely on the administrative hearing transcript, which contains numerous instances of hearsay. If Chase wishes to introduce testimony of events that he allegedly witnessed, he will have to testify himself.

### f. Punitive damages not available against the School District

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), the Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Id.* at 271, 101 S. Ct. at 2762, 69 L. Ed. 2d at 635. The Tenth Circuit has recognized this rule. "[M]unicipalities are not liable for punitive damages under § 1983." *Dill v. City of Edmond*, 155 F.3d 1193, 1210 (10th Cir. 1998).

### h. Scope of Employment

A school district employee cannot be held liable for intentional infliction of emotional distress if her actions were within the scope of employment. OKLA. STAT. tit. 51, §§ 153, 163(C) (2001). An employee is acting within the scope of employment if she is engaged in the work which has been assigned to her by her employer, or is doing that which is proper, usual, and necessary to accomplish the work assigned to her by her employer, or is doing that which is customary within the particular trade or business in which the employee is engaged. OUJI 6.7; *see also Brayton v. Carter*, 163 P.2d 960, 962 (Okla. 1945); *Retail Merchants Ass'n v. Peterman*, 99 P.2d 130, 131 (Okla. 1940).

### Conclusion

**WHEREFORE**, the Defendants submit this Trial Brief for the Court's use and reference.

s/Frederick J. Hegenbart
**Frederick J. Hegenbart, OBA No. 10846**
**Andrea R. Kunkel, OBA No. 11896**
**Jerry A. Richardson, OBA No. 10455**
**ROSENSTEIN, FIST & RINGOLD**
**525 S. Main St., Suite 700**
**Tulsa, OK 74103-4500**
**(918) 585-9211**
**Attorneys for Defendants**

## CERTIFICATE OF MAILING

I hereby certify that on February 22, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael H. Brady
Brady Schaulat & Falsetti
P.O. Box 718
719 N. Shartel
Oklahoma City, OK 73101-0718

s/Frederick J. Hegenbart
Frederick J. Hegenbart